Argued 6 November; decided 2 December, 1901.

### McMAHAN v. CANADIAN RAILWAY COMPANY.

[66 Pac. 708.]

PLEADING AND PROOF—FAILURE OF PROOF.

1. Parties must succeed or fail in legal proceedings as the proofs correspond with or differ from the pleadings, and where the evidence is of a fact different from the one alleged there is a fatal failure of proof: as an example, where plaintiff pleaded a parol agreement, but on the trial admitted the execution and validity of a written contract for the same services, radically different from the alleged oral one, the pleadings and proof did not correspond, and a nonsuit was properly granted.

RATIFICATION OF ACTS OF AGENT.

2. Where agents of a railway company, not authorized to make contracts for newspaper advertising, arranged to have advertisements inserted in a newspaper, and to have copies forwarded to the general passenger agent, who had authority to make such contracts, in pursuance of which arrangement the advertisements were inserted, and copies of the publication and monthly statements of account were forwarded to the general passenger agent, there was evidence from which the jury might infer that the agreement was ratified by him.

From Marion: GEO. H. BURNETT, Judge.

Action by L. H. McMahan against the Canadian Pacific Railway Company. From a judgment in favor of defendant, plaintiff appeals.                    REVERSED.

For appellant there was a brief and an oral argument by *Messrs. Samuel T. Richardson* and *John A. Carson.*

For respondent there was a brief over the names of *Brown,*

*Wrightman & Myers* and *Geo. G. Bingham,* with an oral argument by *Mr. Jefferson Myers* and *Mr. Bingham.*

Mr. Justice Wolverton delivered the opinion of the court.

The complaint contains two counts, by the first of which it is alleged that between November 7, 1891, and March 1, 1893, the plaintiff printed and published, at the special instance and request of the defendant, certain advertisements in the Woodburn Independent, at the agreed price of $218.30, which the defendant undertook to pay by furnishing plaintiff transportation over its lines of railroads and steamships as he should desire; that about April 10 it furnished transportation to the amount of $77.70; that subsequently plaintiff demanded transportation of the defendant in the further sum of $140.60, being the balance due, which was refused; and that $218.30 is the reasonable value of the services rendered. By the second count it is alleged that the Independent Publishing Company, then the publisher of the Daily Independent, and the Oregon Independent, printed and published, at the request of defendant, in said newspapers, certain advertisements between March 10 and April 15, 1894, which service is of the reasonable value of $411.75; that during said time the publishing company rendered monthly statements to the defendant of the work performed; that no objections were made thereto; and that the claim was duly assigned to plaintiff. These allegations are specifically denied by the answer, which contains a further defense setting up a contract entered into between plaintiff and defendant about May 1, 1892, whereby it was agreed that plaintiff should, for the period of one year, publish advertisements in the Woodburn Independent, comprising a space of six inches, payments to be made at the rate of $9 per month, in transportation over the rail lines of the defendant; that in pursuance thereof plaintiff published advertisements for the period of ten months, and no longer; that the defendant on March 31, 1893, furnished plaintiff transportation to the amount of $107.10; and that the contract is the same as that referred to in the complaint. The issues having been formu-

lated, a trial was proceeded with before a jury; and, when the plaintiff's evidence was in, a nonsuit was granted on motion of the defendant, and the plaintiff appeals.

A judgment of nonsuit having been given on defendant's motion, we must look to the record to ascertain whether the proofs were such that the jury might reasonably have drawn an inference therefrom of defendant's liability under the allegations of the complaint. A careful examination of the testimony shows that there are two questions involved. The first is as to whether the proofs tend to establish the cause set out in the first count, the basis of which is, by the plain intendment of the pleading, an express contract. The other pertains to the second cause, and involves the inquiry whether the jury could have reasonably inferred from the testimony adduced that plaintiff's assignor had the requisite authority from the defendant to incur the liability sued on, or that it ratified the transaction.

1. The plaintiff produced Jacob L. Mitchell as a witness, who testified, in substance, that he was an agent of the Canadian Pacific Railway, and that by his arrangements with the company he was authorized to solicit patrons for its railway lines. When a ticket was desired, he was required to forward the money therefor to the company's office at Vancouver, British Columbia, whereupon an order was sent to him upon the company's ticket agent at Portland or Huntington, as might be convenient, and the patron would be supplied in this way. No tickets were intrusted to him for sale directly. His authority extended also to the establishment of other agencies throughout the Willamette Valley of similar character to his own, but under his supervision Mitchell applied to the plaintiff at Woodburn, Oregon, who was then the publisher and proprietor of the Woodburn Independent, to ascertain his rates for advertising; and, upon being informed touching the matter, he sent to the company for and obtained a contract, which he sent to the plaintiff, and had it signed. This contract bears date May 1, 1892, was admitted by the plaintiff to have been executed by him, and was offered in evidence upon his cross-

examination, the effect of which is that he, in consideration of transportation to be furnished by the defendant to the value of $9 per month, agreed to publish in the Woodburn Independent, when called upon to do so, display advertisements, for one year, commencing March 1, 1892, at the rate of $1.50 per inch for a six-inch space, and to send to the general passenger agent of the railway company at Montreal, Canada, and to D. E. Brown, Vancouver, British Columbia, a copy of the paper in the meanwhile.  In further proof of the allegations of the first count, plaintiff testified that Mitchell applied to him in November, 1891, and made arrangements with him whereby he should insert certain advertisements and reading notices in his paper, in consideration whereof he was to be furnished with transportation over the lines of the company, and that in pursuance of such agreement he inserted a five or six-inch advertisement, commencing with the issue of the paper of November 7, 1891, which was continued until March 1, 1893; that the rate for this work was $9 per month; that in addition thereto he inserted locals in his paper from time to time at the agreed rate of ten cents per line, amounting to $21.60, and that he did other advertising, which, together with such locals and the display advertisement alluded to, amounted to $218.30; that the services rendered were reasonably worth that amount; and that he has received in transportation the sum of $77.70, and no more.  He further testified that as to the balance he has demanded of the company transportation, but has been refused, and hence claims that the amount of such balance is due him in cash.

It is not very clear from the testimony what other advertising the plaintiff did for the defendant, for which he has made the charge of $218.30, except the item of $21.60 for locals, and the display "ad" running from November 7, 1891, to March 1, 1893, which two items would amount to $181.60 only.  But this circumstance is not very material, in the view we have taken of the matter.  The plaintiff first claimed in his testimony that he had no written contract whatever with the defendant for the services to be rendered, and the complaint

was drawn, no doubt, with that idea in view; but, when the contract above alluded to was produced, he admitted its execution, and, being in writing, it must be considered to have been the only contract in the premises, and as superseding any verbal arrangements that may have been entered into between the parties touching the matters of which it speaks. It sets forth specifically the terms and conditions relating to the services to be rendered, and the compensation to be paid. The complaint counts upon an entirely different and distinct contract,—so much so that it could never be mistaken for the written one introduced in evidence, and admitted to be the true contract between the parties. The result is that there is a failure of proof of the contract or cause of action relied upon by the plaintiff. It is not permissible, under the settled rules of pleading and practice, for a party to sue upon one contract and recover upon another; and, where the contract apparently established by the proofs is different from the one sued on, there is, without doubt, a failure of proof to establish the cause of action. In such an event, where the plaintiff does not procure leave to and amend the complaint so as to make it conform to the proofs, it is proper to grant a nonsuit: *Tomlinson* v. *Monroe,* 41 Cal. 94; *Johnson* v. *Moss,* 45 Cal. 515. So that, as to the first count, it was properly granted.

2. The second count is based upon advertising done by the Independent Publishing Company at the instance of the defendant. As to this the evidence tends to show that the plaintiff, who was then the agent and manager of the publishing company, went to the office of Mitchell, in Salem, and solicited the business; that Mitchell authorized him to insert a display advertisement, embracing a six-inch space, in the Daily and Semiweekly Independent, the rates for which were $3 per week for the daily, and $2 for the semiweekly; that the advertisement was continued from March 10, 1893, to April 1, 1894; that in the meantime he published an article consisting of two hundred and nine lines at the especial request of Mitchell and one Nuckey, a traveling and passenger agent of the defendant; that they took the article to the publishing company's office,

and directed its insertion. Mitchell further testified that his manner of obtaining advertisements in local papers in behalf of the defendant was to ascertain the rates from the publishers, advise the company touching the matter, and request that the advertising be done, whereupon, if it thought favorably, it supplied him with a contract, and this he had signed by the publisher, and the work was then done in obedience to such contract; that he did not undertake to bind the defendant without proper authority; that all he did was simply to negotiate with the publishers, and the contracts were made by its other officers; and that he did not undertake to bind the company, except through them. Nuckey worked under instructions from the assistant general passenger agent, and, beyond what authority he derived from that source, he had none. In this connection it must be observed, however, that plaintiff testified that Mitchell and Nuckey both instructed him, as the agent of the publishing company, to send one copy of both publications, when the advertisements were inserted, to the head office, at Montreal, Canada, and another to Mr. Brown, the district general passenger agent, at Vancouver, British Columbia; that in pursuance thereof the publications were mailed as directed during the continuance of the advertisement, and besides that he sent to D. E. Brown, the district general passenger agent at Vancouver, monthly statements of accounts, showing the services rendered and the amount charged.

While there is no acknowledgment of the receipt of any of these papers or statements of account shown, it appears that the plaintiff wrote to the company after the services had been fully rendered, making a claim therefor; and the district general passenger agent of the company at Vancouver, British Columbia, without denying any liability, requested to have an itemized statement of the claim made out and forwarded to him. This is, in substance, the evidence tending in any respect to indicate by what authority the publishing company performed the services for which the action is brought. While it is apparent that Mitchell had no authority from the company to direct the insertion of the advertisements, and it is not clear that Nuckey was authorized thereto, yet, when it is

shown that copies of the papers were forwarded to the superior officers of the company as directed by them, and monthly statements of account for the services rendered were also forwarded to the district general passenger agent at Vancouver, we are impressed that there is sufficient in the record from which the jury might reasonably have inferred the requisite authority to do the work. There was evidence tending to show a ratification, if the authority of Mitchell and Nuckey was not adequate to the purpose in the first instance, by not having disclaimed liability when the company was advised of what was transpiring. In this view, the case should have gone to the jury on the second count.

The judgment will therefore be reversed, and the cause remanded for such further proceedings as may seem appropriate.

REVERSED.